Good morning, your honors, and may it please the court. Mr. Mr. Green sets before you a number of arguments that require this case to be remanded to the trial court for a number of reasons, starting with the evidence in connection with counts eight and nine. You're arguing both cases together now, right? That is my understanding, your honor. The government produced insufficient evidence to support the conviction on counts eight and nine, and specifically what the government alleged in the indictment was that New Century Mortgage had wired some funds and that Mr. Green had caused those funds to be wired. However, the evidence is frail. Counsel, can we cut to the chase on this one? Why shouldn't we find, if I could ask you, why shouldn't we find that there was sufficient circumstantial evidence to support this verdict? The jury could have found. Because I don't think there was sufficient circumstantial evidence, right? All there is is a wire that has some amount of money that goes to a particular escrow company. Well, it is a precise amount of money. It is the price to the penny. And an account number on it. I'm sorry, your honor. And a loan number on it, the same number that was his number. Those numbers are on there, but I mean, there's, I still would submit that there is not sufficient circumstantial evidence. And wasn't there some verbal testimony that said that this money came from the mortgage company? I'm trying to recall, your honor. I don't, I don't recall. My recollection at this time is that the only witness who testified about this was Roberto Amenta. And he only testified about Deutsche Bank. He didn't testify about New Century. I didn't hear what you said. He only testified about what? About money coming from Deutsche Bank and not from New Century Bank. Ms. Daly, we have to look at this in the light most favorable to the prosecution. You agree, correct? Yes, your honor. And so here, it seems like the government provided evidence that Green signed applications to obtain loans in the amount of $656,000 and $164,000 from New Century. And the wires offered at trial had Mr. Green's name and the exact amount of money at issue in counts eight and nine. And I think it was Cynthia Perez of Placer Title that testified that Placer Title received those exact amounts of money in a wire of loan funds from New Century on behalf of Eric Green. I'm just having a tough time trying to figure out why that wasn't sufficient evidence for a rational jury to convict Mr. Green of these two counts, counts eight and nine. I think because it leaves, there's so many other possibilities. There's possibilities of clerical errors. There's possibilities of other documentary errors that the government did not exclude based on the proof that it provided. Well, but that either was or could have been argued down below. And I don't know that it's our role at this point to say what it could have. I mean, in light of the standard that we have to give, I think this is a tough, tough, tough argument for you. It is sounding as though it is, Your Honor. But there is two. I mean, Mr. Green makes two challenges, two counts, eight and nine. And the second one is the variance argument. That comes down to the same thing. I mean, if they could have convicted him of what he was charged with, then there's no variance. I'm sorry, Your Honor. You're saying if, in fact, there was sufficient evidence to convict him of having gotten the money from New Century, then there's no variance. Well, I guess, I mean, that is one way of looking at it. But the other way of looking at it is that the evidence provided at trial is not the theory of the case that the government set forth in their indictment. Well, you're right. So what I'm saying is that they both amount to the same thing. There's not one argument. There's not two arguments. There's one. Correct, Your Honor. And I would move on to the restitution argument. The issue is Mr. Green is ordered to pay approximately $118,000 in restitution. On that, you flatly misread that chart that you put into your platform, right? I mean, have you figured that out yet? No, I have not, Your Honor. All right. Well, all right. This chart where it says unpaid balance, that's the unpaid balance on the loan. It's not the amount of money that they got. The amount of money that they got is the price, is the percentage. They don't write it down as an amount of money. They write it down as a percentage. So there was a discount. They did get less than that. So I don't know how you're reading it. But I think you're reading unpaid balance incorrectly. I'm sorry. I think we're seeing this differently, Your Honor. My understanding is that New Century sold the loan, and New Century chose to discount the loan prior to the default. And therein, I think, was the problem. Yes, but in your applying brief, you suggested they didn't lose anything based on that chart. And you're wrong about that. I mean, you shouldn't come and go out about that. They did lose $118,000. Yes, there is a loss. They do lose money. So you were wrong in their applying. Yes, Your Honor. That was wrong. Yes, Your Honor. Let me ask you about the – I'm sorry. Go ahead, Judge Persaud. Go ahead. You go ahead. Okay. I was going to ask you about the vindictive sentence issue, because I think you're arguing that the district court vindictively resentenced Mr. Green. I'm not really persuaded that the presumption of vindictiveness applies here, because he was sentenced to the same amount of time. But I'm curious, what is Mr. Green's burden of proof to show that the district court vindictively resentenced him if that presumption does not apply? And how do you think he's met that? Sorry, Your Honor. I'm trying to flip to that portion of my brief, which addresses that. I will say that I think the burden of proof in this area is complicated and challenging, because the rule in this circuit, as I understand it from Bono versus Benov, is that there is no reasonable likelihood of vindictiveness unless there is a triggering event, which I think we do have a triggering event under the law in this case. And then I think the standard is set forth by the United States Supreme Court in Pierce, where the court explains – they've concluded that when a judge imposes a more severe sentence, the reasons must affirmatively appear. So I don't know that there's a specific clear statement in the law of exactly what the burden of proof is, but that there has to be the reasons for the different or harsher sentence have to appear on the record and have to appear reasonable given the totality of the circumstances. Can I ask a question about that? He didn't get a harsher sentence, of course. So are you relying on the fact that he was convicted of fewer counts but got the same sentence? Is that your argument? Or did I misunderstand it? That is in part the argument. And then the other part of the argument is after the first trial, he received a four-point reduction for a minimal role. And after the second trial, he got a minor role reduction and only a two-point reduction. Well, that's a different issue, and we can talk about that. And that's a function of him getting the evidence in that he wanted to get in in the government's response to it. But if we could back up because I'm just trying to probe at Judge Merguia's question a bit. And she's asking about the burden of proof. There's presumption that kicks in sometimes, and I'm trying to figure out how it is you think it triggered. That seems to be premised upon your position that there's a harsher sentence here. And the only way I can get this to be a harsher sentence is if I recognize that he's getting the same sentence having been convicted for fewer counts. But I don't want to put words in your mouth. I'm really trying to understand the argument. I think it's twofold. I think it's he's getting the same sentence having been convicted of fewer counts, and the court refusing to employ the same logic and adopt the same downward variances that it did at the first trial. Okay, but if it's the downward variance, if it's getting just the two points rather than the four points, that's a different analysis, right? And you know from the briefing, the government's response is on remand. He got his expert in. He had his testimony. And so then they responded by explaining, oh, perhaps you really were the mastermind, the one who really had maybe not quite such a minor role after all. What's wrong with that? Because that's not actually true, right? What happened, the evidence at both trials was essentially the same, and the court acknowledged that. I mean, I quote the court directly. Is it your position? Hold on. Just to be clear, so you think on remand he didn't get to add any new evidence? I thought that was the point of remand. No. He added, Mr. Green added new evidence. Right. Right. And the government countered it. The government countered with the same evidence. There was no new evidence adduced by the government. This is, Ms. Daly, I think it's at ER 22. The district court explained that Mr. Green introduced new expert testimony in the second trial. And the way the government chose to defend against the expert was to essentially highlight Mr. Green's knowledge of the fraud. And in doing so, it looks like ER 24, the district court explained that the government focused on how Mr. Green, and I think the quote was, was positioned to plan such a scheme and understood how his lies would influence the lender. And so it seems like the district court gave an explanation as to how more information came out regarding your client's role in the offense that seemed to address and justify his, you know, giving less of an adjustment for the role in the offense. But the court also acknowledged that that same evidence was introduced. Sorry, the court acknowledged that the government introduced the same evidence of Mr. Green's training and experience in the mortgage industry in the first trial. And what the court said is, quote, certainly these details about the mortgage industry with correspondence with the part in which he laid out the fraud scheme, they may have been before the court in the first trial. The court knew about it. It was the same evidence put on by the government. The court may have focused on different evidence, but it wasn't. But if he had given me the minimal reduction, the actual sentence still would have been within the guidelines. Is that right? Yes, Your Honor. It would have been a guideline sentence. It was both times. I think low end at one point and high end the other time, right? Are you going to talk at all about the release issue or are you not? Because he's going to be released anyway in two weeks. He's going to be released in two weeks, like the court just said. So I would prefer to reserve my remaining time for rebuttal. OK, thank you very much. Ms. Chavez. Thank you, Your Honors. May it please the court. Good morning. Jill Thomas on behalf of the United States. Green convictions on the three wire fraud counts were supported by ample evidence of his fraudulent mortgage scheme. The indictment fairly informed Green of the crimes alleged. And at sentencing, the district court properly calculated restitution and ultimately gave Green a legally justified low end guideline sentence. Lastly, the district court did not abuse its discretion in denying Green's motion for reconsideration of this compassionate release motion, taking each argument in turn. First, let's just go to the release issue briefly. Yes, Your Honor. Green is going to be released in two weeks to some halfway house or something. Is that right? Yes, a residential reentry center in Oakland, California, is my understanding. And that's happening. There's no doubt about it and so on. I have no other information to suggest anything other than that is happening. I see. All right. Well, I need to ask your opponent whether they're withdrawing the issue or what we ought to be doing with it. You go ahead. Very good. Thank you, Your Honor. And I was listening to the questions of the court during Ms. Bailey's oral argument. And so just to be clear, for the record, Ms. Perez at 560-61 ER did testify that those funds were the lender's funds, the funds that came in for counts eight and nine. And so she she there was verbal testimony to corroborate the the Fedwire transcripts that were submitted at trial. And the government agrees with the court that the variance comes down to the same argument related to the Deutsche Bank issue that was raised. Similarly, the restitution was properly calculated and at ER 13 and ER 79. The appellant below when he was. I've had others of these cases, all from the Eastern District of California, interestingly enough. And I don't think this issue was raised as such or not very well. But there is some question about whether the bank was really a victim. I'm sorry, Your Honor. The bank was what? Well, I said there's some question about whether the bank is really a victim as opposed to this notion that the banks knew very well what was going on, that that the victim were were essentially people down the line. And that's only relevant to the question of whether the bank ought to be getting restitution. But that issue hasn't really been raised as such in this case. I think I think that's right. And certainly they're not mutually exclusive, but the government would agree with you that the downstream loan purchasers Credit Suisse Bank and Morgan Stanley certainly lost more money than New Century's loss at the at the beginning. But they did not submit a victim impact statement. The argument about New Century's loss not being attributable to Mr. Green is essentially that they sold it before he defaulted. And so the loss was a market loss and not his problem. And what is the proof that the loss was due to him? Well, Your Honor, in Roberts, the court, the Supreme Court stated that losses in part incurred through a decline in the value of the collateral sold are directly related to the offenders having obtained the collateralized property through fraud. And in this case, Mr. Green submitted his false documents. I mean, it could be that there's a loss of the market's just gone down. Certainly. But the market fluctuations, this was a foreseeable circumstance by Mr. Green. He submitted the false loan documents four months prior to the sale of New Century's loans to Morgan Stanley and Credit Suisse. What is the notion? The notion is that they by then found out that the house wasn't really worth what they said? Or what exactly is the causation trigger as to the loss that is attributable to Mr. Green when it was sold before the default? Well, the the approximate cause and the harm that was done with whether the harm. The question is, is whether the harm alleged has a sufficiently close connection to the conduct and that those foreseeable causes usually do not break that causal chain. And here it's not a natural disaster, as discussed in the Louis case. This is foreseeable. Mr. Green knew when he was signing those loan documents in 2006 prior to the sale by New Century to the loan purchasers that those were false documents. So that fraud occurred prior to. And so what if there had been a sudden market loss? What if the collateral lost value suddenly because of this is a hypothetical. I'm trying to figure out how how far you're pushing that authority. According to the rovers case, the market fluctuations are just part of what happens in in real estate markets. Well, if they're if they're foreseeable, it doesn't come down to person ability. If they're typical, what I'm going to call typical, not extraordinary market fluctuations, maybe. But what if there were a serious market crash? I suspect it would have to turn on the facts, Your Honor. But in this particular instance. Yeah, I think you're right. And I'm not trying to press the point that doesn't appear in the facts of this case. But I but I don't think that authority is infinitely elastic. I just I just don't. And so I wanted to make sure you're not taking that position. I don't think you are. Yes, Judge. Thank you. The government agrees with that assessment. If if he had been completely truthful in his documents. I guess you might say, well, he wouldn't have gotten the loan. So they wouldn't have sustained the loss. I mean, that's not even clear, given what was going on in the market at the time. But is that the argument that they would never have given him a loan? So they wouldn't have sustained the loss of the loss. And it doesn't matter that the loss was just even if the loss was just an ordinary market loss, he's still responsible for it because they would have been alone. I'm just trying to see what the causation notion is. Certainly, Your Honor. Well, that's at least in part one of the arguments. There was ample testimony by several individuals that said that the loan would never have been approved at over 100 percent loan to value. And that's what was because he inflated the purchase price by lying about it at eight hundred and twenty thousand. That loan would never have been approved. Moreover, when they would have done the analysis of his income to what what he would have had to pay out in a mortgage, he would not have met that number and therefore he would not have been approved. So lying on his income, lying on his employment history, lying on the bank assets that he had was certainly the. These were factors that influenced the underwriter's decisions and ultimately the funding of the loan. And so the loan would not have been approved and there would not have been a loss. And agreed with the courts that, indeed, there has to be the causation and the causation happened on the front end when he lied about the inflated price. Is there anything in the record that explains why they sold us at one hundred and sixteen thousand dollars loss? No, Your Honor. Just the under oath affidavit submitted by the victim in a victim impact statement at attachment five in the PSR. Which says which says that they sold it in. They sold it to two separate banks, the first loan and the second loan to two separate banks, and that they sold that at a loss totaling approximately one hundred and eighteen thousand dollars. Why they sold it? No, no, Your Honor. Thomas, can you speak to the vindictive sentence just a little bit? The allegation that this sentence was vindictive by applying a less favorable role reduction under the sentencing guidelines. I just I'm curious if we assume that the presumption of the dictiveness does not apply. What is green in your view? What's green's burden of proof to show vindictiveness? The government would tie the two together. So the abuse of discretion review for the minimal role assessment at sentencing that Mr. Green relies on that for the vindictive sentencing argument, or at least in part relies on whether he was given this minimal role. He has the burden to prove the vindictiveness in the record before you. And there is no burden by what showing what's the standard? As far as I understand it, it's preponderance of the evidence standard. But I do not have a citation to that and certainly can brief the court at a later date on that particular citation. But that is just off the top of my head, not without a citation. You do say in your briefing that the burden is on. And I think the Ninth Circuit cases also say that the burden is on the defendant. But I'm not sure we've ever said what that burden was or I was trying to see what your view of what that burden was. I was just looking up some cases and I did. I was looking at the Curtin case and another case and it does simply just say that the burden is on the defendant. And so that's why I wanted to do additional research on the actual defendant in the absence of a Pierce presumption. Yes. And in this case, the government brief and I argue to you today that he's not entitled to the presumption of vindictiveness because it's only occurring in certain circumstances when the sentence is more severe and that the reasons for the harsher sentence do not affirmatively appear in the record. And here he got a low end guideline sentence and he actually got a role adjustment in this case where probation. The question is the comparison. As you know, we know that. But her argument, if you could just focus in on it, is in part at least that it's the same trial. That's what she's telling us. Same trial, same evidence. First time around, he gets the four row reduction. Second time around, just two. And of course, he wasn't convicted above the same number of counts. So the same sentence, you know, I think arguably her strongest argument is that he got the same sentence after having been convicted of fewer counts. Why? Why doesn't that. What's wrong with that argument? The Rob case makes very clear that a defendant may be understandably disappointed that his successful appeal on a particular number of counts didn't result in a reduction in the final sentence. But it does not give a rise to the vindictiveness presumption. And so here, like the Rob case, the original sentence relied on the underlying fraudulent conduct did not change. The harm to the community did not change. But his lack of remorse was actually more pronounced at the second sentence because time had passed and he had additional information put in the PSR where he wanted to move on with his life. And that pretrial being on pretrial services release prevented him from moving on. And the court found in the record on the JNS in this particular instance, the court found that he did not he was he did not take responsibility for his conduct. He didn't have remorse. And that the information was more robust, more contextual related to his influence. Or I should say his insider knowledge and how he knew that that information would influence the decision makers below. It was the same evidence. I don't know quite what it means that it was highlighted. Well, I mean, I would just analogize this to, for example, in a golf game, you're never hitting the exact same shot. And so in this particular trial, it's a second trial. There was new there was different evidence. It's not the exact verbatim transcript. And in this case, it was highlighted in the sense that the expert that the court pointed out that the expert testimony from the defendant was cross examined on on how an underwriter could be influenced to make a loan. And Mr. Green's case. And so the court spoke to that and that Mr. Green was highlighted to be a central player and in the fraudulent scheme and that his knowledge of the inside machinations of the mortgage industry allowed for him to not get the minimal role, but to get a minor role. So can you just explain that a little better? I understand that the reason for the remand is he didn't get his expert. Second time around, he got his expert. Opposing counsel has said you didn't counter it with a different with any different evidence. I agree. There's an opportunity to cross examine. But it does seem peculiar that his expert, if I'm understanding you correctly, is backfiring. Is the notion that you're that the government was able to show that it wasn't that complicated for him or that he was somehow to manipulate this or or or that he was somehow uniquely situated to manipulate the situation or what is it? He was uniquely situated to manipulate the situation. And the court found that the expert testimony from Mr. Martin or Professor Martin, it that that the government chose to attack this case differently in the second trial because it came back where Professor Martin was allowed to testify. And so the cross examination surrounded around, hey, what are the factors that would influence an underwriter in a case to make a loan like this? And he admitted that, you know, the information that he provided to the court, he didn't even have his notes. He couldn't find his notes. And so that one professor could not take down all the testimony of the insiders that the government presented. And even Mr. Orozco for the defense. And so that just gets you back to zero. It doesn't explain why there is now a week, a stronger case. Well, but there's I mean, at the end of the day, they still have to prove their dictators. I'm sorry. I didn't mean to interrupt you. I apologize. I don't know what you said because I couldn't hear you. But I was just going to say, but at the end of the day, they still have to point to vindictiveness in the record for them to win on the vindictiveness issue. And there just is nothing in the record, words or deeds or actions by the district court. In fact, he gave him a minimal role adjustment down to a minor role, sorry, mitigating role down to a minor role in this case. And probation and the government argued for no role. And so the court there is there's just nothing in the record that suggests that the court was vindictive at the end of the day. He simply did say that, Mr. Green, while it's his right, he never he never had remorse. And he never accepted responsibility for his conduct. And it was pronounced at the second trial more so than it was. Thank you very much. Your time is up. Thank you, Your Honor. Thank you. I would like you to begin by telling us what we want to be doing with the second case. Are you going to withdraw the appeal? What should we do with it? Should we wait two weeks and dismiss it as moved or what? I mean, you know, there are interesting legal issues, which perhaps one would have to reach if one were going to decide anything. And it doesn't sound like there's a lot of point in deciding it. What as a technical matter do we do with the case? I think it is moot as soon as Mr. Green is released to community confinement in the next couple of weeks. I do think there are important legal issues that are raised by both sides concerning the application of the CARES Act and whether or not the court, in fact, had had jurisdiction at the time that the compassionate release motion was made. I think it could be. So my proposition is we wait two weeks. You inform us as soon as he's released and we dismiss the case as moved and everybody is happy. Assuming we never have another pandemic and don't have to have another pandemic, you come back. But there's not a lot of point in our trying to decide this case. It would look, it would be a little strange to decide it's not novel and important issues. I agree with the court on that. It will be moved in two weeks. And you will tell us as soon as he's released? As soon as I find out, yes. And Ms. Thomas will tell. All right. I would just like to respond briefly to one point the government made that Ms. Thomas made the comment that there's nothing in the record that reflects that the court was vindictive in its sentence. And I respectfully disagree. And in particular, it was actually with the court's order in the compassionate release case. I think that evidences the court's perception. And in one of those orders, the court wrote that the defendant has continually refused to accept responsibility for his actions and has gone to great lengths to avoid or at least postpone imprisonment since conviction. The only thing Mr. Green did to avoid or postpone imprisonment since conviction was file an appeal. He was exercising his constitutional rights. I thought he also tried to get released pending appeal and so on. He did file a motion for pre-trial release for a very long time. And then he tried to get released when the first appeal was pending and I guess when the second appeal was pending. Right. He was on pre-trial release for approximately eight years, which I think explains his comments about how he'd like to move on with his life. But he didn't do anything. I mean, he filed an appeal. He has a constitutional right to do that. He filed a motion for bail pending appeal. He has the ability to do that under the rules. I mean, that's not delay tactics. That's frankly what basically every criminal defendant does who's convicted at trial. There's nothing new or novel or dilatory about that. And I think it evidences the court's perception. What's your best case on that to support that that establishes vindictiveness on the part of the district court? I think Pierce is probably the best case for Mr. Green. I'm sorry, I didn't hear you. It's what? Pierce? And acknowledging that in fact that that case has been since limited. But that is the best case. Okay. Thank you. Your time is up. Thank both of you for your arguments. The case of United States v. Green is submitted.
judges: Berzon, Murguia, Christen